**Steven A. STEPANIAN, II,**
**Plaintiff-Appellee,**

v.

**David R. ADDIS, Defendant-Appellant.**

**No. 81–5670.**

United States Court of Appeals,
Eleventh Circuit.

March 7, 1983.

Anthony J. Steinmeyer and Howard S. Scher, Civ. Div., Appellate Staff, Dept. of Justice, Washington, D.C., for defendant-appellant.

· Steven A. Stepanian, II, pro se.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

RONEY, Circuit Judge:

The sole question on this appeal is whether absolute immunity protected the defendant, a federal prosecuting attorney, from a common law tort action based on what he said at a press conference announcing the criminal indictment of the plaintiff. Holding that the kind of immunity applicable depends upon a development of the facts, we affirm the district court's denial of defendant's motion for summary judgment.

Defendant David Addis, the assistant United States Attorney primarily responsible for presenting evidence to the grand jury, announced at a press conference in Orlando, Florida, the indictment of Steven Stepanian and others for criminal violations of federal law in connection with an alleged land fraud. The news reports of the press conference attributed various statements to the prosecutor which Stepanian contends defamed him, and violated a federal regulation regarding the release of information by the Department of Justice about criminal proceedings as well as the American Bar Association's Code of Professional Responsibility Disciplinary Rule 7–107 concerning extra-judicial statements. After receiving a directed verdict of acquittal on the criminal charges, Stepanian filed this diversity civil suit against Addis seeking damages for common law slander. Addis contended that as a prosecutor he had absolute immunity from suit.

The district court initially dismissed the suit because it decided Addis's conduct fell within the scope of his duties as a prosecutor, and he was absolutely immune from suit under *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir. 1979). Shortly thereafter, the former Fifth Circuit announced its decision in *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). *Marrero* held that state prosecutors sued under 42 U.S.C.A. § 1983 are entitled to only a qualified, good faith immunity when they engage in activities outside their quasi-judicial roles, and then only to the extent that the activities were authorized as part of their discretionary duties. Thereupon the district court, *sua sponte,* vacated its dismissal and reinstated the original complaint.

Addis moved for summary judgment, again asserting his claim of absolute immunity. In the alternative, he claimed he acted in good faith and was entitled to qualified immunity. The trial court denied the motion for absolute immunity and stated further factual development was needed to determine if Addis could claim a qualified immunity. The court certified the case as involving a controlling question of law about which there was a substantial ground for a difference of opinion so that an immediate interlocutory appeal could be taken.

On Addis's appeal, the question before us is whether Addis was entitled to absolute immunity as a matter of law. There are two paths to absolute immunity for a federal prosecutor. First, it could apply to a prosecutor for activity protected as quasi-judicial. Second, if the prosecutor is doing something that is not clothed with quasi-judicial protection, he could receive the same immunities given other federal officials in the executive branch of the government, which in some instances can be absolute. *See Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

■ *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), controls the decision as to quasi-judicial immunity. There the Court held that a prosecutor's statements to news media do not fall within the range of quasi-judicial activity afforded absolute immunity. *Marrero* involved a news conference to announce the results of a search and seizure, an activity the court held was not quasi-judicial. Here

the prosecutor held a news conference to announce the return of an indictment. The decision to seek the indictment would clearly constitute quasi-judicial activity. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). We see insufficient difference between the two cases, however, to distinguish one news conference from the other for absolute immunity purposes. We hold that the *Marrero* decision controls this case insofar as it holds that a news conference is not absolutely protected by quasi-judicial immunity.

■ This brings us to the argument that Addis is entitled to absolute immunity under the rule announced in *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). *Barr* applied the doctrine of absolute immunity from suits alleging common law violations to federal executive officials below Cabinet rank. *Barr* involved a libel action brought against the head of a federal agency. The Court limited the immunity to discretionary actions falling within the scope of the officer's official duties, thus endorsing an analysis based on functions rather than status. *Id.* at 573–75, 79 S.Ct. at 1340–41. If the disputed activities are discretionary and within the outer perimeter of the official's line of duty, the official is immune from suit even though his or her acts were malicious. The question presented here is how to define the scope of a prosecutor's protected authority.

Addis's official authority as to what he could say was bounded by the regulation found at 28 C.F.R. § 50.2 (1981)[1] and the

1. The relevant subsections of the regulation provide:

*Release of information by personnel of the Department of Justice relating to criminal and civil proceedings.*

(b) *Guidelines to criminal actions.*

(1) These guidelines shall apply to the release of information to news media from the time a person is the subject of a criminal investigation until any proceeding resulting from such an investigation has been terminated by trial or otherwise.

(2) At no time shall personnel of the Department of Justice furnish any statement or information for the purpose of influencing the outcome of a defendant's trial, nor shall

personnel of the Department furnish any statement or information, which could reasonably be expected to be disseminated by means of public communication, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial.

(3) Personnel of the Department of Justice, subject to specific limitations imposed by law or court rule or order, may make public the following information:

(i) The defendant's name, age, residence, employment, marital status, and similar background information.

(ii) The substance or text of the charge, such as a complaint, indictment, or information.

indictment. The indictment itself was a matter of public record. Any statements by Addis repeating the information contained therein could not be the subject of a defamation action. The regulation spells out the information which Justice Department officials may release about criminal defendants. It represents a considered policy judgment as to the proper balance between the Department's obligation to inform the public about its statutorily defined duties and a criminal defendant's right to be free of prejudicial pre-trial publicity. It would seem that if Addis stated only what he was permitted to say by the regulation, he would be entitled to the absolute immunity accorded in *Barr*. If Addis's comments went outside the authority given in the regulation, however, the immunity might be at most qualified. The *Marrero* Court stated that to the extent the prosecutor was authorized to make press statements as part of his discretionary duties he may be entitled to assert a qualified immunity defense. We do not have before us any question as to what immunity, if any, Addis would have short of absolute immunity to the entire lawsuit.

Whether Addis exceeded the scope of his authority in making particular statements was a disputed issue of material fact. Until the facts are developed, it can not be determined to what immunity Addis may be entitled. The district court properly denied summary judgment for the defendant.

AFFIRMED.

(iii) The identity of the investigating and/or arresting agency and the length or scope of an investigation.

(iv) The circumstances immediately surrounding an arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons, and a description of physical items seized at the time of arrest. Disclosures should include only incontrovertible, factual matters, and should not include subjective observations. In addition, where background information or information relating to the circumstances of an arrest or investigation would be highly prejudicial or where the release thereof would serve no law enforcement function, such information should not be made public.

(4) Personnel of the Department shall not disseminate any information concerning a defendant's prior criminal record.

(5) Because of the particular danger of prejudice resulting from statements in the period approaching and during trial, they ought strenuously to be avoided during that period. Any such statement or release shall be made only on the infrequent occasion when circumstances absolutely demand a disclosure of information and shall include only information which is clearly not prejudicial.

(6) The release of certain types of information generally tends to create dangers of prejudice without serving a significant law enforcement function. Therefore, personnel of the Department should refrain from making available the following:

(i) Observations about a defendant's character.

(ii) Statements, admissions, confessions, or alibis attributable to a defendant, or the refusal or failure of the accused to make a statement.

(iii) Reference to investigative procedures such as fingerprints, polygraph examinations, ballistic tests, or laboratory tests, or to the refusal by the defendant to submit to such tests or examinations.

(iv) Statements concerning the identity, testimony, or credibility of prospective witnesses.

(v) Statements concerning evidence or argument in the case, whether or not it is anticipated that such evidence or argument will be used at trial.

(vi) Any opinion as to the accused's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea to a lesser offense.

(7) Personnel of the Department of Justice should take no action to encourage or assist news media in photographing or televising a defendant or accused person being held or transported in Federal custody. Departmental representatives should not make available photographs of a defendant unless a law enforcement function is served thereby.

(8) This statement of policy is not intended to restrict the release of information concerning a defendant who is a fugitive from justice.

(9) Since the purpose of this statement is to set forth generally applicable guidelines, there will, of course, be situations in which it will limit the release of information which would not be prejudicial under the particular circumstances. If a representative of the Department believes that in the interest of the fair administration of justice and the law enforcement process information beyond these guidelines should be released, in a particular case, he shall request the permission of the Attorney General or the Deputy Attorney to do so.

28 C.F.R. § 50.2(b) (1981)